PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARLA B. WEAVER, | ) | CASE NO.   4:08CV02253 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |

This is an action for judicial review of the final decision of the Commissioner of Social Security Administration ("Agency") denying the applications of Plaintiff Sharla B. Weaver for Disability Insurance Benefits and Supplemental Security Income.  The parties have consented to the jurisdiction of the undersigned Magistrate Judge.

Having found that the Agency's denial of benefits was based upon substantial evidence and proper legal standards, the Court affirms the decision of the Administrative Law Judge.

## I.  Overview

At the time of the administrative hearing, Plaintiff Sharla B. Weaver was 48 years old, had finished the 11th grade and earned the equivalent of a high school diploma.  (Tr. 512.)  Her past relevant work experience included working as a packager, vending machine attendant, and mail clerk.  (Tr. 19-20.)  Weaver based her application for benefits on the allegedly disabling conditions of depression and osteoarthritis of the lumbar spine and hip with an onset date of

(4:08CV02253)

January 14, 2003.[1]  (Tr. 12, 15.)

   The Administrative Law Judge ("ALJ") found that Weaver had not engaged in substantial

gainful activity since the alleged onset date.  (Tr. 12.)  The ALJ agreed that Weaver suffers from

severe Major Depression, a substance abuse disorder which is in remission, and osteoarthritis of

the lumbar spine and hip.  (Tr. 15.)  Nevertheless, the ALJ determined that Weaver does not

suffer from an impairment or combination of impairments listed in, or medically equal to one

listed in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 16.)  Finally, after considering the record

in its entirety and consulting with Lynn Smith, the vocational expert, the ALJ concluded that

although Weaver could not perform the full range of light work, she could perform some light

work that included her past relevant work and was therefore not disabled.  (Tr. 19-20.)

   After reviewing the record as a whole, including: (1) the medical evidence presented; (2)

Weaver's testimony and statements made to her medical care providers; and (3) the legal

standards applied, the Court finds that the ALJ's decision is supported by substantial evidence

and is based upon proper legal standards.

## II.  Procedural History

   Weaver filed an application for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") on August 25, 2003, alleging a disability onset date of January 14, 2003.

(Tr. 46-48.); *see* 20 C.F.R.§ 404.1503.[2]  The claims were initially denied on December 24, 2003

---

   [1]  In her request for administrative review of the ALJ's denial decision, Weaver simply
stated, "I am totally and permanently disabled."  (Tr. 8.)

   [2]  The regulations governing both the DIB and SSI programs are virtually identical.
Therefore, except where otherwise necessary, the Court will refer only to the DIB regulations

(4:08CV02253)

and denied again upon reconsideration on May 17, 2004.  (Tr. 12.)  On July 16, 2004, Weaver

filed a request for an administrative hearing before an ALJ which was held on August 14, 2006.

(Tr. 12.)  The ALJ issued a decision denying benefits on September 27, 2006, finding that

Weaver did not have an impairment that meets or medically equals a Listing and was capable of

performing a range of light work.  (Tr. 12-20.)  Weaver filed a request for a review of the hearing

decision by the Appeals Council which was denied on July 21, 2008.  (Tr. 5.)  Upon the denial,

the decision of the ALJ dated July 21, 2008, became the final decision of the Commissioner.  (Tr.

5.)  Seeking judicial review of the Agency's final decision denying her benefits, Weaver timely

filed a Complaint with this Court asserting the following issues:

> 1.     Whether the ALJ's decision that the claimant does not meet or medically
>        meet [sic] an impairment listed in 20 C.F.R. § 404 Appendix I is erroneous
>        and not supported by the substantial weight of the evidence.
>
> 2.     Whether the ALJ's decision that the claimant can perform past previous work
>        is erroneous and not supported by the substantial weight of the evidence.

ECF No. 21 at 1.

### III.  Standard of Review

#### A.  Five Step Sequential Analysis

The ALJ must follow a five-step sequential analysis in order to determine whether a

claimant is disabled.  At Step One, the ALJ considers the claimant's work activity.  A claimant

is not disabled if engaged in substantial gainful activity, *i.e.*, working for a profit.  At Step Two,

---

found at 20 C.F.R. § 404.1500-404.1599.  The last two digits of the DIB regulation mirror the
last two digits of the corresponding SSI regulation (*e.g.*, 20 C.R.F.§ 404.1503 corresponds with
20 C.R.F.§ 416.903).

(4:08CV02253)

the ALJ considers the medical severity of the claimant's impairments.  A claimant is not

disabled if he or she does not have a severe medically determinable physical or mental

impairment that also meets the duration requirement in 20 C.F.R § 404.1509, or a combination

of impairments that is severe and meets the duration requirement.  At Step Three, the ALJ

determines whether the claimant has an impairment that meets or equals one of the criteria of an

impairment listed in Appendix 1 and meets the duration requirement.[3]  A claimant is disabled if

he or she has an impairment that meets the listing and duration requirement.  Before considering

the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"),

*i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite

limitations from impairments.  At Step Four, the ALJ considers whether the claimant's RFC

permits him to perform past relevant work.  A claimant is not disabled if he can perform past

relevant work.  At the final step, Step Five, the ALJ considers the claimant's RFC and his age,

education, and work experience to determine whether the claimant may work.  A claimant is

disabled if he or she is unable to work.  *See* 20 C.F.R. § 404.1509(a)(4).

   B. __Judicial Review of a Final Agency Decision__

      Judicial review of the ALJ's decision denying disability benefits is limited to

determining whether there is substantial evidence to support the denial decision and whether the

Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401

(1971)).  "Substantial evidence is more than a scintilla of evidence, but less than a

---

   [3] *See, e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1.

(4:08CV02253)

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).  Furthermore, judicial review of the ALJ's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.  *Id*.  The Court must review the findings of the ALJ consistent with the above deferential standards.

## IV.  **Analysis**

To establish disability under the Act, a claimant must show that she is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).

To determine whether a claimant can engage in any substantial gainful activity, the regulations prescribe a five-step sequential evaluation.  20 C.F.R. § 404.1520; *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).  If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends.  20 C.F.R. § 404.1520(a).  The ALJ decided this case at Step Four of the five-step sequential evaluation.  On September 27, 2006, the ALJ determined that Weaver was not under a

(4:08CV02253)

"disability," as defined by the Act, because she remained capable of performing her past relevant work as a packager, a vending machine attendant, and a mail clerk, as the demands of that work did not exceed her RFC.[4]  (Tr. 19); *see* 20 C.F.R. § 404.1520(f); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 558 (6th Cir. 1995) (explaining a person capable of performing past relevant work is not disabled as a matter of law and should be denied benefits).

The claimant bears the ultimate burden of proof on the issue of disability.  20 C.F.R. § 404.1512(a).  Moreover, the claimant has the burden to provide detailed medical evidence allowing the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Last, the claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations.  20 C.F.R. § 404.1512(c).

**A.**  **Substantial Evidence Exists to Support the ALJ's Finding that Weaver Does Not Meet or Equal Listing 12.04.**

While the ALJ determined that Weaver suffers from severe depression, a substance abuse disorder that is in remission, and osteoarthritis of the lumbar spine and hip, he also found that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 14,16.)  Weaver argues that her mental impairment meets or medically equals Listing 12.04.[5]  ECF No. 21 at 7.

_____

[4] The RFC is an administrative assessment of "what an individual can still do despite his or her limitations."  20 C.F.R. § 404.1545(a)(1).

[5] In the instant case, Weaver has not been diagnosed with either a Manic Syndrome or a Bipolar Syndrome; thus, paragraphs (A)(2) discussing Manic Syndrome and (A)(3) discussing Bipolar Syndrome are not applicable in this case.  The Commissioner treated Weaver's Listing argument as if she is claiming that she satisfies the criteria of Listing 12.04(A)(1), Depressive

(4:08CV02253)

The listed mental impairments are divided into Paragraph A (a set of medical findings) and Paragraph B (a set of impairment-related functional limitations).  Listing 12.04 reads as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> > a. Anhedonia or pervasive loss of interest in almost all activities; or
> > b. Appetite disturbance with change in weight; or
> > c. Sleep disturbance; or
> > d. Psychomotor agitation or retardation; or
> > e. Decreased energy; or
> > f. Feelings of guilt or worthlessness; or
> > g. Difficulty concentrating or thinking; or
> > h. Thoughts of suicide; or
> > i. Hallucinations, delusions, or paranoid thinking; or
>
> AND
>
> B. Resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> > 2. Marked difficulties in maintaining social functioning; or
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> > 4. Repeated episodes of decompensation, each of extended duration;
>
> OR

---

Syndrome.  Weaver did not object.  The Court concurs that Listing 12.04(A)(1) is applicable because Weaver has been diagnosed with a Depressive Syndrome, specifically Major Depression.

(4:08CV02253)

> C. Medically documented history of a chronic affective disorder of at least 2 years'
> duration that has caused more than a minimal limitation of ability to do basic work
> activities, with symptoms or signs currently attenuated by medication or psychosocial
> support, and one of the following:
>
>> 1. Repeated episodes of decompensation, each of extended duration; or
>> 2. A residual disease process that has resulted in such marginal adjustment
>> that even a minimal increase in mental demands or change in the environment
>> would be predicted to cause the individual to decompensate; or
>> 3. Current history of 1 or more years' inability to function outside a highly
>> supportive living arrangement, with an indication of continued need for such
>> an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (2009).

Weaver contends that she meets four of the nine listed requirements in Paragraph A and

two of the listed requirements in Paragraph B. ECF No. 21 at 8, 10, & 11. With respect to

Paragraph A, Weaver claims that she suffers from "sleep disturbance, feelings of worthlessness,

difficulty concentrating, and thoughts of suicide." ECF No. 21 at 8. Dr. Bengala, Weaver's

treating psychiatrist, noted Weaver's pattern of sleep disturbance in his treatment notes. (Tr.

129, 165, 371-72.) Weaver reported that she was hospitalized several times for suicidal ideation.

(Tr. 111.) Her medical records include two documented suicide attempts. (Tr. 204.) Dr.

Bengala also documented Weaver's crying spells in his treatment notes. (Tr. 372.) Last,

Weaver contends that she experiences periods of overeating and isolation. (Tr. 392, 514-15.)

With respect to Paragraph B criteria of Listing 12.04, Weaver points to the report of Dr.

Bengala to establish her marked limitations in social functioning and concentration, persistence,

or pace.[6] ECF No. 21 at 11. Dr. Bengala opined that Weaver's concentration including long and

---

[6] Plaintiff does not allege that she has marked limitations in "Restriction of Activities of
Daily Living" or that she experienced "Repeated Episodes of Decompensation, each of extended
duration." Thus, she has waived any such arguments, as well as all other unraised contentions.

(4:08CV02253)

short-term memory, abstract reasoning, fund of information, and range of intelligence was "average" and had only a "moderate" degree of limitation.  (Tr. 97, 374.)  Weaver testified that she has difficulty finishing tasks and a poor attention span.  (Tr. 516.)  Further, Weaver claims that the pain in her lower back and hips negatively influences her concentration.  (Tr. 515.)  Weaver argues that these findings are supported by substantial evidence.  ECF No. 21 at 7.

In response to Weaver's arguments regarding Paragraph A, the Commissioner  argues that the record does not include "medically documented persistence, either continuous or intermittent" in four of the nine areas.  ECF No. 25 at 7.  For example, Listing 12.04(A)(1)(a) requires that the claimant lose interest in almost *all* activities.  The Commissioner explains that even though Weaver socially isolated herself to some degree, she also discussed activities such as baking a cake, gardening, cooking and cleaning.  (Tr. 17,  454, & 517.)  Additionally, Weaver testified that her appetite varied and that she had a tendency to overeat, but more importantly she failed to show that her appetite disturbance "chang[ed] her weight" as required by 12.04(A)(1)(b).  (Tr. 392, 515.)  Therefore, the defendant argues that Weaver failed to satisfy Paragraph A criteria of Listing 12.04.

With respect to Paragraph B criteria of Listing 12.04, the Commissioner argues the ALJ properly found that Weaver had a "mild" degree of social functioning limitation.  ECF No. 25 at 9.  According to the ALJ's written opinion, Dr. Prasad assigned Weaver a Global Assessment of

---

*See Brainard v. Sec'y of Health & Human Servs., 889 F.2d 679, 681 (6th Cir. 1989)* (explaining arguments not presented to the district court are abandoned).

(4:08CV02253)

Functioning ("GAF") score of 75, reflecting only a mild impairment in social functioning.[7]  (Tr.

16.)  Moreover, the ALJ explained that Dr. Bengala assigned Weaver a GAF score of 85,

reflecting an individual who has "absent or minimal symptoms with good functioning in all

areas."  (Tr. 17.)

    Additionally, the Commissioner argues that the ALJ properly found that Weaver had

"moderate" limitations with respect to "concentration, persistence and pace."  (Tr. 15.)

Therefore, assuming *arguendo* that Weaver could satisfy the diagnostic criteria listed in

Paragraph A of Listing 12.04, the defendant argues that Weaver failed to satisfy the required two

marked limitations listed in Paragraph B and thereby still failed to meet or equal Listing 12.04.

    The ALJ determined that Weaver "does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R, Subpart P,

Appendix 1."  (Tr. 16.)  The ALJ did not directly make a finding for Paragraph A, but did for

Paragraph B of Listing 12.04.  Pursuant to the requirement of Listing 12.04, Weaver needed to

satisfy the criteria in Paragraphs A *and* B.  The failure to meet the requirements of Paragraph A

*or* B dictates a finding that Weaver does not meet or medically equal a listed impairment.  *See*

*Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).  Therefore, it is sufficient to solely discuss

Weaver's failure to satisfy the criteria of Paragraph B.

---

    [7]  "The GAF scale is used to report the clinician's judgment of an individual's overall
level of functioning. A GAF score in the range of 41 to 50 is indicative of serious symptoms
(*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment
in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  *See*
American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 34
(American Psychiatric Association, 4th ed. 2000) (*DSM-IV*)."

(4:08CV02253)

When a claimant alleges disability due to a mental impairment, the Commissioner must use a special technique to evaluate the limitations imposed by the alleged impairment:

> (b)  *Use of the technique.*
>
>> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section.
>>
>> . . .
>
> (c)  *Rating the degree of functional limitation*.
>
>> (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.  We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.
>>
>> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.  Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. . . .
>>
>> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitations:  Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. . . .
>>
>> . . .
>
> (d)  *Use of the technique to evaluate mental impairments*.  After we rate the  degree

-11-

(4:08CV02253)

of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).

. . .

(2) If your mental impairment is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. We do this by comparing the medical findings about your impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. We will record the presence or absence of the criteria and the rating of the degree of functional limitation . . . in the decision at the administrative law judge hearing and Appeals Council levels . . . .

. . .

(e) *Documenting application of the technique.* . . .

. . .

(2) At the administrative law judge hearing . . . level[ ], the written decision issued by the administrative law judge . . . must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reach a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

. . .

20 C.F.R. § 416.920a.

In this case, the ALJ properly applied the "special technique" to rate the degree of limitation caused by Weaver's mental impairment in each of the four broad functional areas pursuant to 20 C.F.R. § 404.1520(a)(c)(3). When applying the special technique, ALJs assess the level of severity of a claimant's mental impairment by rating a claimant's limitations and

-12-

(4:08CV02253)

restrictions in four functional areas: (1) activities of daily living[8]; (2) social functioning[9]; (3) concentration, persistence or pace[10]; and (4) episodes of decompensation.  *See* 20 C.F.R. § 404.1520a(c)(3) (*citing* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)).  These four functional areas correspond to the requirements of "Paragraph B" of the Agency's mental impairment Listings at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00 *et seq*.  The first three criteria are assessed using a five-point scale: none, mild, moderate, marked[11] and extreme; and the last criterion is assessed using a four-point scale: none, one or two, three, four or more.  20 C.F.R. § 404.1520(a)(c)(4).  The Court finds that the ALJ sufficiently articulated his analysis of the evidence and properly found that Weaver did not have marked limitations in any functional area.

Weaver first argues that she has a marked limitation in "social functioning."  The ALJ found that Weaver had a "mild" degree of limitation.  (Tr. 15).  The ALJ properly found that

---

[8] "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Listing 12.00(C)(1).

[9] "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." Listing 12.00(C)(2).

[10] "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." Listing 12.00(C)(3).

[11] Marked is generally defined as when several activities or functions are impaired, or even only when one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

(4:08CV02253)

Weaver was not as socially limited as she suggested.  As the ALJ explained in his decision, Dr. Prasad assigned Weaver a GAF score of 75, reflecting "no more than a slight impairment in occupational functioning." (Tr. 16-17.)  The ALJ also noted that in 2003, Dr. Bengala assigned Weaver a GAF of 85, indicating "absent or minimal symptoms with good functioning in all areas." (Tr. 17.)  In 2006, Dr. Bengala assigned Weaver a GAF of 65, indicating only "mild limitations" in social and occupational functioning, and thus the ALJ observed that Weaver was only "moderately" limited in maintaining social functioning.  (Tr. 18.)  Further, the ALJ noted that Ms. Stephens, Weaver's counselor, wrote a letter dated March 17, 2006, (Tr. 17), and a second similar letter dated August 4, 2006, in which she reported "no mental limitations." (Tr. 17.)  Thus, the medical source opinion evidence substantially supports the ALJ's finding that Weaver had only "mild" limitations in social functioning.

Next, Weaver argues that she has a mental limitation in the functional area of concentration, persistence and pace.  The ALJ found that Weaver had "moderate" limitations. (Tr. 15.)  To the extent that Dr. Bengala believed Weaver's attention, concentration, persistence, and pace was compromised, Dr. Bengala noted in a medical exam that this compromise resulted in only "moderate" deficiencies within this area.  (Tr. 374.)  The ALJ  noted that Dr. Bengala assigned Weaver a GAF of 65, indicating that overall the person is only experiencing "mild limitations in occupational functioning." (Tr. 18.)  The ALJ observed that Dr. Bengala failed to include clinical and laboratory abnormalities, which is expected if Weaver were deemed disabled.  (Tr. 18.)  Additionally, none of Weaver's treating physician's ever opined that Weaver

-14-

(4:08CV02253)

met or medically equaled Listing 12.04.[12]  With respect to concentration, persistence, and pace, the ALJ reasonably concluded that this evidence indicated that Weaver only had a moderate degree of limitation.

Accordingly, substantial evidence exists to support the ALJ's finding that Weaver did not meet the necessary two marked limitations from Paragraph B in order to satisfy Listing 12.04.

### B.  Substantial Evidence Supports the ALJ's Past Relevant Work Finding

Weaver argues that the ALJ erred in finding that she can perform her past relevant work. Weaver asserts three arguments claiming that substantial evidence shows that she cannot perform her past work.  ECF No. 21 at 12.  First, Weaver argues that she cannot perform her past work because her "ability to maintain concentration, persistence, and pace is markedly limited."  ECF No. 21 at 13.  Second, Weaver argues that the ALJ should have given greater weight to Dr. DePizzo's opinion explaining that Weaver should lie down for two hours each day due to severe pain.  ECF No. 21 at 13.  Lastly, Weaver argues that the ALJ did not give proper weight to the vocational expert's responses to her counsel's questions.  ECF No. 21 at 13.

The Sixth Circuit has ruled that the claimant bears the burden of describing the physical and mental demands of her past work and the inability to return to it.  *See Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989); *see also Atterberry v. Sec'y of*

---

[12]  Weaver argues that had the ALJ credited Dr. Depizzo's *suspicions* of fibromyalgia, the ALJ would have concluded that she met Listing 12.04.  ECF No. 21 at 12.  The Court notes that (1) there is no diagnosis of fibromyalgia, in fact Dr. Depizzo opines that "[s]he either has fibromyalgia or is narcotic seeking" (Tr. 306) and, as a result, (2) no medical evidence prompting the demanding analysis dictated in *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Therefore, the ALJ's analysis is thorough and complete.

(4:08CV02253)

*Health & Human Servs.*, 871 F.2d 567, 569 (6th Cir. 1989) ("The initial burden of proof in this

matter rests with the claimant to show that he cannot perform his past relevant work.").

Additionally, the Regulations state that if a claimant's past jobs do not require her to perform

activities in excess of her assigned RFC, then she will be found not disabled.  *See* 20 C.F.R. §§

404.1520(f), 1560(b), 1561.

　　　　With respect to Weaver's first argument, the Court determined above that substantial

evidence supports the ALJ's finding that Weaver only had a moderate degree of limitation in her

ability maintain concentration, persistence, and pace as opposed to a marked limitation as

required in Listing 12.04.  Accordingly, Weaver's first argument is not well taken.

　　　　Without punctuating it as a primary issue, Weaver challenges the weight given her

treating physician, Dr. Depizzo, and treating psychiatrist, Dr. Bengala.  The Court's review of the

record and the ALJ's analysis does not support these concerns.  The ALJ appropriately

considered the opinions of both Drs. Depizzo and Bengala. As importantly, he appropriately

articulated his reasons for giving "little weight" to both opinions.  (Tr. 18.)

　　　　Weaver's implication that the ALJ violated the treating physician rule because the ALJ

should have given greater weight to Dr. DePizzo's opinion explaining that Weaver should lie

down for two hours each day due to severe pain, is not supported by the record or controlling

legal authority.  ECF No. 21 at13.  The Sixth Circuit requires that an ALJ must give the opinion

of a treating source controlling weight if she finds that the opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

-16-

(4:08CV02253)

541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  Deference is due, however, only

when the physician supplies sufficient medical data to substantiate her diagnosis and opinion.

*Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir. 1976).

     In the instant case, the ALJ determined that "[t]he objective findings do not support [Dr.

DePizzo's] opinion that [Weaver] has to lie down two hours a day because of pain."  (Tr. 18.)

Dr. Dipizzo's opinion had two frailties: (1) it was contradicted by other reliable medical

evidence, and (2) it was not corroborated by other reliable medical evidence.  The ALJ explained

that Dr. DePizzo's opinion was "not consistent with the objective medical record" because he

"described the cause of [Weaver's] pain as 'unknown' and noted slight pain and decreased range

of motion in the lumbar spine were [Dr. DePizzo's] clinical findings used as the basis for his

opinion."  (Tr. 18.) Additionally, the ALJ observed that Dr. DePizzo's opinion discussing

Weaver's "spine was 'otherwise normal'" and that Weaver's MRIs only show "mild" findings.

(Tr. 18.)  Therefore, the ALJ's treatment of Dr. DePizzo's opinion does not enjoy a presumption

of correctness when the record reflects contradictory evidence because the Court does not resolve

such conflicts of evidence, *Garner*, 745 F.2d at 387, and presupposes an ALJ's "zone of choice."

*See Mullen*, 800 F.2d at 545.

     In addition to being contradicted, Dr. DePizzo's opinion should not be given controlling

weight because no other witness or substantial evidence in the record corroborated that Weaver

must lie down for two hours each work day due to severe pain.  Given that Dr. DePizzo's opinion

that Weaver needs to lie down for two hours each work day is not based upon sufficient medical

data to substantiate his opinion, *Giddings*, 480 F.2d 652 at 656, the Court finds that the ALJ did

-17-

(4:08CV02253)

not violate the treating physician rule when he assigned Dr. DePizzo's opinion no weight.

With respect to Weaver's last argument, a hypothetical question must precisely and comprehensively set out every physical and mental impairment of the claimant that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  A hypothetical question that is supported by the evidence in the record, need not reflect unsubstantiated allegations by the claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

In the instant case, the vocational expert testified that "a hypothetical worker of Ms. Weaver's age, education, and RFC would be capable of performing her past relevant work as a packager, a vending machine attendant, and a mail clerk."  (Tr. 526-27.)  On cross-examination, Weaver's counsel added restrictions to the hypothetical and inquired whether a hypothetical worker is capable of performing her past relevant work when she is (1) "limited by having to lay down and having to rest one to three hours in a workday" and (2)  "off task due to concentration and attention problems at least approximately two hours in an eight-hour workday."  (Tr. 530. )  The vocational expert testified that under both circumstances, "there would be no jobs."  (Tr. 530.)

The ALJ observed that the vocational expert's testimony explaining that a hypothetical worker of Weaver's age, education, and RFC capacity is capable of performing work as a

-18-

(4:08CV02253)

packager, vending machine attendant, and a mail clerk is consistent with and supported by the

Dictionary of Occupational Titles.  (Tr. 19.)  The ALJ, however, explained that the vocational

expert's testimony in response to Weaver's counselor's added hypothetical restrictions was not

supported by objective medical evidence, but rather "culled" from Weaver's testimony.  (Tr. 19.)

Therefore, the ALJ gave  "no weight to this line of questioning or to [the vocational expert's]

responses."  (Tr. 19.)

        The Court finds that the vocational expert's testimony in response to Weaver's

counselor's added restrictions regarding the need to lie down for two hours during the work day

and concentration problems should not be afforded controlling weight because the restrictions are

not supported by substantial medical evidence.  As discussed above, the ALJ gave "little weight"

to Dr. DePizzo's opinion because it was inconsistent and failed to support his suggestion that

Weaver has to lie down for two hours every work day.  (Tr. 18.)  Regarding counsel's second

restriction posed to the vocational expert, the ALJ determined that Weaver only had a

"moderate" degree of limitation with concentration.  (Tr. 374.)  Moreover, on September 5, 2003,

Dr. Bengala contradicted counsel by indicating that Weaver's thought process was organized and

her ability to concentrate average.  (Tr. 132-33.)  Therefore, the ALJ did not give improper

weight to the vocational expert responses to Weaver's counsel's added restrictions.

        The ALJ properly found that Weaver is "capable of performing past relevant work as a

packager, a vending machine attendant, and as a mail clerk [because] [t]his work does not require

the performance of work-related activities precluded by Ms. Weaver's residual functional

capacity."  (Tr. 19.); *see Garcia v. Sec'y of Health & Human Servs*., 46 F.3d 552, 558 (6th Cir.

(4:08CV02253)

1995) (discussing a person capable of performing work she performed before the impairment is

not disabled as a matter of law and should be denied benefits). Procedurally, after the RFC is

determined the ALJ compares the claimant's RFC with her past work requirements.[13] 20 C.F.R.§

404.1520(f). The ALJ determined that Weaver retained the RFC to "perform a range of light

work . . . specifically, she can sit, stand and/or walk six hours in an eight-hour workday with

normal breaks." (Tr. 16.) Light work includes lifting no more than 20 pounds at a time with

frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1560(b).

The ALJ need not proceed to the fifth step of the sequential evaluation if the claimant

can be found not disabled at any prior step. 20 C.F.R. § 404.1520(a). In the instant case, the

ALJ decided that Weaver was not disabled at Step Four of the five-step sequential evaluation.

(Tr. 19); *see* 20 C.F.R. § 404.1520(f). The ALJ appropriately stopped the analysis at this point.

Weaver's arguments lack merit. The Court finds that substantial evidence supports the

ALJ's conclusion that Weaver was not under a "disability" as defined by the Act, because she

remained capable of performing her past relevant work as a packager, vending machine

attendant, and mail clerk, and the demands of those positions do not exceed her RFC. (Tr. 16,

19.)

### V. **Conclusion**

The Court finds the ALJ's decision that Sharla B. Weaver was not disabled and,

therefore, not entitled to Disability Insurance Benefits and Supplemental Security Income is

---

[13] The ALJ applies a legal standard (in this case, light work as defined by the Regulations) to the medical facts concerning Plaintiff's functional abilities when determining Weaver's RFC. *See* *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996).

(4:08CV02253)

based upon proper legal standards and supported by substantial evidence.  Accordingly, the

 ALJ's decision denying benefits is AFFIRMED.  This matter is terminated from the Court's

Docket.

　　　　IT IS SO ORDERED.

December 31, 2009                                                     s/ Benita Y. Pearson
Date                                                                Benita Y. Pearson
                                                                   United States Magistrate Judge